# AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANTS

I, Abigail L. Tarwater, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Federal Rule of Criminal Procedure 41 for search warrants authorizing the examination of electronic devices, described in **Attachments A1-A9**, which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in **Attachments B1-B9**.

2. I am a Special Agent ("SA") with the Drug Enforcement Administration ("DEA") and have been since October 2018. I am a federal law enforcement officer within the meaning of Federal Rule of Criminal Procedure 41. I am currently assigned to the DEA's Kansas City District Office. I have received specialized training at the DEA Academy, Quantico, Virginia, in conducting illicit drugs investigations, including drug interdiction, identification, distribution of drugs, undercover operations, asset forfeiture, use of confidential sources, and the legal aspects of conducting drug investigations. Prior to my assignment with the DEA, I worked as a Police Officer for the Kansas City, Missouri Police Department ("KCPD") from approximately August 2017 until May 2018.

3. During my tenure with the DEA, I have communicated extensively with other state and federal law enforcement personnel who specialize in drug and firearm investigations. I have also had extensive experience in debriefing defendants, participating witnesses, informants, and other persons who have personal experience and knowledge with regard to various firearm related crimes.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. Because this affidavit is

1

submitted for the limited purpose of obtaining search warrants, I have not included each and every fact known to me relating to the underlying investigation. Rather, I have set forth only the facts that I believe are necessary to support probable cause for the search warrants sought herein.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

5. The property to be searched is described in **Attachments A1-A9** and herein as follows:

    a. A Maxwest Flip cell phone, believed to be utilized by **Charles HILL** ("**C. HILL**") (hereinafter "**Hill Device 1**");

    b. A Samsung cellular telephone contained within a black case, believed to be utilized by **C. HILL** (hereinafter "**Hill Device 2**");

    c. A large iPhone contained within a clear case, believed to be utilized by **Russell SPENCER ("SPENCER")** (hereinafter "**Spencer Device 1**");

    d. A Samsung cellular telephone in a black case, believed to be utilized by **SPENCER** (hereinafter **"Spencer Device 2"**);

    e. A Samsung cellular telephone, believed to be utilized by **Charles WILEY ("WILEY")** (hereinafter **"Wiley Device"**);

    f. An iPhone with a red back and a clear case, believed to be utilized by **Raymond STEWART ("STEWART")** (hereinafter **"Stewart Device"**); and

    g. A T-Mobile cellular telephone in a black case, believed to be utilized by **Robert RIDLEY ("RIDLEY")** (hereinafter **"Ridley Device"**).

    h. A Samsung flip-style smart phone, believed to be utilized by **Alfred WOODS, Jr. ("WOODS")** (hereinafter "**Woods Device 1**").

      i. An iPhone with assigned call number 346-212-3846, believed to be utilized by **WOODS** (hereinafter "**Woods Device 2**").

The foregoing devices are collectively referred to herein as the "**Target Devices**." The **Target Devices** are currently in the custody of the KCPD at a KCPD Off-Site facility, which is located within the Western District of Missouri.

    6. Based on my training, experience, and the facts as set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 841(a)(1) and 846, that is, distribution of controlled substances and conspiracy to distribute and possess with the intent to distribute controlled substances (the "**Target Offenses**"), have been committed by **C. HILL**, **SPENCER**, **WILEY, STEWART**, **RIDLEY**, **WOODS** and others known and as yet unknown. The requested warrants would authorize the forensic examination of the **Target Devices** for the purpose of identifying electronically stored data particularly described in **Attachments B1-B9.**

## PROBABLE CAUSE

    7. DEA and KCPD are conducting a criminal investigation of **C. HILL**, **SPENCER**, **WILEY, STEWART**, **RIDLEY**, **WOODS** and others known and as yet unknown, regarding possible violations of 21 U.S.C. §§ 841(a)(1) and 846, that is, distribution of controlled substances and conspiracy to distribute and possess with the intent to distribute controlled substances.

    8. On May 15, 2023, the Honorable Roseann Ketchmark, United States District Judge, Western District of Missouri, signed an order authorizing the initial interception of wire and electronic communications of multiple cell phones used by **C. HILL** and **R. SPENCER** for a period of 30 days (order number 23-WT-00001-RK, 23-WT-00003-RK, 23-WT-00004-RK, and 23-WT-00006-RK). During the course of the authorized wiretap, law enforcement agents intercept many phone calls and text messages that indicated **C. HILL**, **SPENCER**, **WILEY**, **STEWART**,

**WOODS,** and others were participating in a conspiracy to distribute PCP and using phones in furtherance of that conspiracy.

9. On September 26, 2023, an Indictment was returned by a Grand Jury in the Western District of Missouri charged **SPENCER**, **C. HILL**, **WILEY**, **STEWART**, and **RIDLEY**, with conspiracy to distribute 1 kilogram or more of PCP. Arrest warrants were subsequently issued for **SPENCER**, **C. HILL**, **WILEY**, **STEWART**, and **RIDLEY** by the Honorable W. Brian Gaddy, U.S. Magistrate Judge for the Western District of Missouri.

10. On September 28, 2023, investigators executed **C. HILL's** Federal Arrest warrant. At the time of **C. HILL's** arrest, he was in possession of a "flip phone," **Hill Device 1** and a "smart phone," **Hill Device 2.** Investigators seized **Hill Device 1** and **Hill Device 2**, which were later transported to KCPD's East Patrol Division Detention Unit.

11. On September 28, 2023, **SPENCER's** Buick Lucerne was observed pulling into a gas station, located at 3801 E. Truman Road, Kansas City, Missouri, where it parked on the east side of the gas pumps, facing southbound. Officers with the Kansas City, Missouri Police Department (KCPD) Tactical Response Team (TRT) responded in an attempt to arrest **SPENCER** inside the vehicle and noted the Buick to be unoccupied. It was then determined that **SPENCER** had entered the gas station while investigators were repositioning for surveillance efforts. **SPENCER** was then observed exiting the gas station and was taken into custody by KCPD TRT officers.

12. A search of **SPENCER's** person yielded a large iPhone, **Spencer Device 1**. An investigator contacted **SPENCER** and advised **SPENCER** of a vehicular search warrant for the Buick Lucerne. During a search of the Buick, an investigator located an Android cell phone, **Spencer Device 2**, plugged into a charger in the center console. Investigators seized **Spencer**

**Device 1** and **Spencer Device 2**, which were later transported to KCPD's East Patrol Division Detention Unit, where **SPENCER** was also transported pending an interview.

13. On September 28, 2023, investigators executed **WILEY's** Federal Arrest warrant. At the time of **WILEY's** arrest, he was found to be in possesion of a cellular telephone, **Wiley Device**. An investigator recovered **Wiley Device**, which was also transported to KCPD's East Patrol Division Detention Unit.

14. On September 28, 2023, investigators executed **STEWART's** Federal Arrest warrant. At the time of **STEWART's** arrest, he was found to be in possesion of a cellular telephone, **Stewart Device**. An investigator recovered **Stewart Device**, which was also transported to KCPD's East Patrol Division Detention Unit.

15. On September 28, 2023, investigators executed **RIDLEY's** Federal Arrest warrant. At the time of **RIDLEY's** arrest, he was found to be in possesion of a cellular telephone, **Ridley Device**. An investigator recovered **Ridley Device** which was also transported to KCPD's East Patrol Division Detention Unit.

16. On September 27, 2023, a residential search warrant was obtained in the U.S. District Court for the Southern District of Texas for a residence located at 5715 Darlinghurst Drive, Houston, Texas 77085.

17. On September 28, 2023, members of the Houston Police Department (HPD) and DEA conducted surveillance in anticipation of the execution of the search warrant. While doing so, investigators observed a subject exit the residence and discard a light-colored 5-gallon bucket which was later retrieved by law enforcment members. The bucket was determined to contain approximately 6.16 kilograms of a substance which appeared to be PCP in the conversion process. The substance field-tested positive for PCP.

18. Shortly thereafter, investigators observed a subject leave the location after loading three additional 5-gallon buckets into their vehicle. Members of the HPD initiated a traffic stop of the vehicle and obtained consent to search the vehicle from the driver. The three 5-gallon buckets were examined and identified as containing a mixture of precursors used in the three-bucket method of manufacturing PCP.

19. Members of the Houston Police Department and DEA then executed the search warrant at 5715 Darlinghurst Drive, Houston, Texas. During the execution of the search warrant, in a bedroom identified as one belonging to Alfred WOODS Jr., investigators located a Samsung flip style smart phone, WOODS' driver's license, and $9,860 in U.S. Currency. Additionally, in the garage, investigators located approximately 2.30 kg containers of PCP manufacturing precursors (Sodium Cyanide mixture).

20. The Samsung flip style smart phone, presumably owned by WOODS, was mailed by FedEx to investigators in Kansas City, Missouri where the device is currently being stored at an off-site law enforcement facility as evidence in anticipation of obtaining a search warrant for the device.

21. On October 6, 2023, WOODS was arrested by members of the HPD for an outstanding warrant related to the violation of the terms of his supervision. At the time of his arrest, HPD officers confirmed that an iPhone at the scene, attributed to WOODS, had a phone number of 346-212-3846, which was one of the phone numbers identified during the course of this investigation as one used by SPENCER's source of supply in Houston, Texas.

22. The iPhone with phone number 346-212-3846 was taken into custody by HPD officers and subsequently mailed by FedEx to investigators in Kansas City, Missouri where the

device is currently being stored at an off-site law enforcement facility as evidence in anticipation of obtaining a search warrant for the device.

23. On November 28, 2023, a Superseding Indictment was returned by a Grand Jury in the Western District of Missouri charging **SPENCER**, **C. HILL**, **WILEY**, **STEWART**, **RIDLEY**, and **WOODS** with conspiracy to distribute 1 kilogram or more of PCP.

24. Based on the foregoing, I believe the **Target Devices** likely contain evidence related to the purchase and sale of controlled substances, and, specifically, PCP. Based on my training and experience, I also know drug traffickers commonly use cellular telephones to facilitate and coordinate drug transactions.

25. I am therefore requesting a warrant to search and analyze the **Target Devices**. The **Target Devices** are currently in KCPD custody at a KCPD Off-Site facility located within the Western District of Missouri. In my training and experience, I know that the **Target Devices** have been stored in a manner in which their contents are in substantially the same state as they were when the **Target Devices** first came into the KCPD's possession.

## TECHNICAL TERMS

26. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. Cellular telephone: A cellular telephone (or mobile telephone, or wireless telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A cellular telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice

communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Cellular telephones may also include global positioning system ("GPS") technology for determining the location of the device.

      b.      Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

      c.      Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

8

  d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

  e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include GPS technology for determining the location of the device.

  f. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0–255, separated by periods (*e.g.*, 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

  g. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

  27. Based on my training, experience, and research, I know that the **Target Devices** have capabilities that allow them to serve as, but not limited to: cellular telephones, text messengers, cameras, media players, internet explorers, social media access, video recorders and GPS navigation devices. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the devices.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

28. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed on the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

29. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrants, but also forensic evidence that establishes how the **Target Devices** were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the **Target Devices** because:

    a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and

11

passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrants.

  e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

30. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrants I am applying for would permit the examination of the **Target Devices** consistent with the warrants. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the **Target Devices** to human inspection in order to determine whether it is evidence described by the warrants.

31. *Manner of execution.* Because these warrants seek only permission to examine devices already in law enforcement possession, the execution of these warrants does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrants at any time in the day or night.

## CONCLUSION

32. For the foregoing reasons, I respectfully submit that there is probable cause to believe that the **Target Devices** presently contain or constitute evidence of violations of 21 U.S.C. §§ 841(a)(1) and 846, that is, distribution of controlled substances and conspiracy to distribute and possess with the intent to distribute controlled substances. I therefore request warrants to search the **Target Devices** described in Attachments A1-A9 for the items set forth in Attachments B1-B9.

FURTHER AFFIANT SAYETH NAUGHT.

_____
ABIGAIL L. TARWATER
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me via telephone or other reliable electronic means on this <ins>1st</ins> day of December 2023.  *Sworn to by telephone  3:15 PM, Dec 1, 2023*



_____
HONORABLE LAJUANA M. COUNTS
United States Magistrate Judge
Western District of Missouri